Case 13-13229    Filed 08/06/13    Doc 114

FILED
AUG -6 2013
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

NOT FOR PUBLICATION

POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 13-13229-B-11 |
| R.K. Best, Inc., | DC No. RPG-1 |
| Debtor. | |
| UCB Best Inn, LLC, Successor-in-Interest to United Security Bank, | |
| Secured Creditor. | |

**MEMORANDUM DECISION REGARDING MOTION FOR
RELIEF FROM THE AUTOMATIC STAY**

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. B.A.P. R. 8013-1.

Marc Forsythe, Esq., of Goe & Forsythe, LLP, appeared on behalf of the secured creditor, UCB Best Inn, LLC, Successor-in-interest to United Security Bank.

Richard Gibson, Esq., of Gibson Law PC, appeared on behalf of the debtor, R.K. Best, Inc.

This Memorandum Decision follows an evidentiary hearing on a motion for relief from the automatic stay (the "Motion") filed by secured creditor UCB Best Inn, LLC, Successor-in-Interest to United Security Bank ("Best Inn"). The Motion relates to a pending foreclosure against the Debtor's only assets, a 61-unit hotel complex and the

related furnishings, located in Bakersfield, California (the "Hotel"); it is opposed by the debtor R.K. Best, Inc. (the "Debtor"). At the time of the evidentiary hearing, this chapter 11 case was only two and one-half month's old. The timing of the Motion is a significant factor in the decision process as the Debtor has not yet had an opportunity to confirm a chapter 11 plan. A ruling in favor of Best Inn will effectively end the bankruptcy case. However, the Bankruptcy Code and applicable case law do not prohibit a secured creditor from seeking early relief in appropriate circumstances.[1] The timing of the Motion only affects, in some cases, the showing which the parties must make to support their positions. When difficult issues come before the court, the court often has no recourse but to fall back on the "burden of proof." The Debtor here had the burden of proof to show, *inter alia*, that it can "probably" confirm a chapter 11 plan within a reasonable time and that there is an effective reorganization in process. For the reasons summarized below, the Debtor has not met that burden and the Motion will be granted.

This Memorandum Decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052.[2] The court has

---

[1] Best Inn's aggressiveness in this case and the timing of this Motion may be attributable in part to the fact that the Debtor and its principal, Ramesh Vaghashia, filed a civil action against Best Inn and its predecessor in the Kern County Superior Court on April 25, 2013, just seven days before commencement of the bankruptcy (case number S-1500-CV-279215-DRL). Best Inn removed the civil action to this court on May 23, 2013 (adversary proceeding number 13-1056). In that civil action, the plaintiffs allege, *inter alia*, that the defendants breached the terms of a prior settlement agreement and violated the California Business and Professions Code, causing damage of at least $1 million. The plaintiffs seek declaratory and injunctive relief, and pray for cancellation of the pending foreclosure. The Debtor states in that pleading that its financial problems began in 2010 "due to the downturn and recession in the economy." The Debtor and Best Inn have already entered into a forbearance agreement in April 2011, to resolve a prior default in the underlying mortgage.

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat.

jurisdiction over this matter under 28 U.S.C. § 1334, 11 U.S.C. § 362 and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A) & (G).

**Background and Findings of Fact.**

This bankruptcy was filed on May 2, 2013, one day before the scheduled foreclosure of liens held by Best Inn.[3] This is a single asset real estate case within the meaning of § 101(51B), the Debtor's only scheduled assets and source of income being the Hotel (valued at $700,000) and personal property incidental thereto (valued at $18,000). The only secured creditors listed on Schedule D are Best Inn (with a scheduled claim in the amount of $1.55 million), and the Kern County Treasure who is in charged with collecting the Hotel's real and personal taxes (in the scheduled amount of $44,000).[4] Schedule E lists priority tax claims owed to the IRS and the Franchise Tax Board in an aggregate amount less than $3,000.[5] The scheduled unsecured claims total approximately $238,000, 88% of which appears to arise from "loans" made in 2010 by individuals, presumably friends and family of the Debtor's principal.

The Debtor's statement of financial affairs (question #1) reports gross income in

---

9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

[3] Best Inn holds a first priority deed of trust, recorded on April 11, 2006, against the Hotel property which secures a promissory note in the face amount of $1.5 million. It also holds a security interest against the Debtor's personal property to secure a subsequent loan in the amount of $50,000. It appears that Best Inn was in the process of foreclosing both liens when the petition was filed.

[4] Best Inn and the County Treasurer have not yet filed proofs of claim. For purposes of this Motion, the actual amounts of those claims, as opposed to the scheduled amounts, are unimportant.

[5] The actual claims filed by the IRS ($6,083.53) and the FTB ($1,696.71) total $7,780.24. Based on those claims, the Debtor has not yet filed its 2012 state and federal income tax returns and its FICA tax returns for the first two quarters of 2013.

2011 from operation of the business in the amount of $292,273, declining significantly to $192,348.04 in 2012. The Debtor reports gross income of $67,000 year-to-date (January through April) for 2013. The Debtor's monthly operating report for May 2013 shows a gross revenue of $17,069.57. The Debtor also lodged a copy of its June 2013 monthly operating report as an exhibit to this Motion. It reports gross revenue for that month in the amount of $17,718.26. Based on these numbers for the first half of 2013, the court can infer that the Debtor is on track to realize a gross revenue in 2013 of approximately $203,600.

The Hotel is owned and operated by Ramesh Kumar Vaghashia ("Ramesh") and his wife Jagrutiben.[6] Ramesh is 48 years old, he was educated in India and holds a degree in business administration. He has worked in the hotel business with his uncle Govind Vaghashia ("Govind") since 1992 and took over the operation of this Hotel, with his cousin in 1999. Ramesh purchased his cousin's interest in the Hotel in 2011 and has been solely responsible for its operation since that time. By 2012, the Hotel was delinquent in its payments to the original lender and Ramesh had to borrow money from Govind, in an unspecified amount, to bring the loan current.

One day before the start of this evidentiary hearing, the Debtor filed a proposed chapter 11 plan, without a supporting disclosure statement, but it had not yet been placed on the court's docket and had not been reviewed by the court before the hearing. The evidentiary hearing commenced with an opening statement from Debtor's counsel,

---

[6] The documents in the record offer three different spellings for the last name of the Debtor's principals. The name listed on the petition and the related documents is Vaghashia. In opposition to the Motion, Mr. Vaghashia's uncle, Govind, signed and filed a declaration showing the family name to be Vaghasia. The name stated on the Debtor's List of Equity Holders is also Vaghasia. Various documents lodged in support of and opposition to the Motion, including the Debtor's 2011 federal tax return also show the Debtor's principal's name to be Vaghasia. However, in the Debtor's subsequent First Amended Chapter 11 Plan, uncle Govind's name is spelled Vaghashia. In support of a subsequent request filed in this Motion for leave to file late documents, the Debtor's principal signed a declaration spelling his name Vaghesia. For purposes of this memorandum, the court will use the name as spelled on the petition, Vaghashia.

1  Richard Gibson, Esq., in which he attempted to explain, somewhat apologetically, the
2  difficult circumstances that led to the Debtor's decline and need for bankruptcy
3  protection. Mr. Gibson described the Debtor as a "mom and pop" operation not affiliated
4  with any other hotel organization. The Hotel's operation is managed solely by Ramesh.
5  The Debtor has one employee, who is paid in cash, and no formal bookkeeping system.
6  All of the Debtor's books and records were kept by hand in paper form and the Debtor
7  had no computerized records or journals of its operation. Indeed, the Debtor was unable
8  to timely file its evidence in preparation for the evidentiary hearing because appropriate
9  financial records did not exist; all of its "paper" records had to first be compiled in exhibit
10 form by the Debtor's bookkeeper. (See Debtor's Ex Parte Application to Permit Late
11 Filing of Documents filed on July 18, 2013.) The Hotel sits in a location where there is
12 intense competition from various chain hotels, which advertise heavily and frequently
13 undercut the Debtor's pricing for hotel rooms. At the time of the hearing, the Debtor's
14 only medium of advertisement was the telephone yellow pages, which began in February
15 2013.
16     Mr. Gibson also summarized the Debtor's proposed plan to comprise two essential
17 components: (1) a 30-year amortization of the debt to Best Inn with interest at the annual
18 rate of 5.5%; and (2) a new "loan" in the amount of $150,000 from Govind. At that, the
19 court questioned whether the Debtor had any authority for the proposition that the 30-year
20 amortization of a commercial loan would be "fair and equitable" within the meaning of
21 § 1129(b)(2) for purposes of a cram-down contest with Best Inn. Debtor's counsel made
22 an offer of proof on that issue in the form of testimony from Govind, but no such proof
23 was forthcoming and the 30-year amortization issue was subsequently abandoned.
24     Midway through the evidentiary hearing, immediately after the direct testimony of
25 Ramesh and the first break, the Debtor's counsel offered to change the terms of the
26 proposed plan to: (1) reduce the amortization period from 30 to 15 years; and (2) include
27 a conditional offer to guarantee performance of the plan by Govind. In subsequent
28 testimony, Govind also offered to train and assist his nephew in how to market the Hotel

and rebuild the Debtor's business.

After the cross-examination of Ramesh, the Debtor called Govind to the witness stand. Govind testified that he owns and operates seven successful hotels in Southern California, and that he has a personal net worth of $20 million, a personal line of credit of $5 million, and is conditionally willing to guarantee the Debtor's performance of a chapter 11 plan. Govind's testimony was supported only by a declaration filed on June 13, 2012, with a copy of a bank statement showing that Govind had $235,454 in the bank at that time. Govind's testimony was not supported by any financial statements and nothing else regarding his personal financial condition was previously provided to this court or to Best Inn. Govind also testified extensively regarding various marketing programs and strategies that the Debtor could, but has not yet, employ to increase its gross revenue. He estimated, without supporting evidence, that proper marketing of the Hotel could increase the Debtor's revenue by at least 15%.

At the conclusion of Govind's testimony, the court broke early for lunch and gave the parties an opportunity to try to negotiate a settlement based on the newly introduced offer of financial support from Govind. That effort was unsuccessful for undisclosed reasons. However, upon resumption of the hearing, the Debtor offered to again amend the proposed plan, this time to drop all contingencies attached to Govind's offer of financial support and extend Govind's personal guarantee of the plan based on whatever property valuation and terms for treatment of Best Inn's claim the court may ultimately approve. In closing argument, Mr. Gibson acknowledged that it would be difficult for the Debtor to reorganize based on its current operating conditions. He argued, in essence, that this case is no longer about the Debtor, it's about Govind's ability to rebuild the Debtor using his experience and financial resources.

One week after the hearing, on July 29, 2013, the Debtor filed its proposed First Amended Chapter 11 Plan (the "Proposed Plan") again without a supporting disclosure

statement.[7] The Proposed Plan is based upon an undefined restructure of the debt to Best Inn on terms to be "determined by the Bankruptcy Court" which will be "unequivocally guaranteed" by Govind. The terms of the "guarantee" itself will be stated in "separate guarantee documents" which were not included with the Proposed Plan. The Proposed Plan provides for a "new value" contribution of $150,000 (the source of which will be the loan from Govind mentioned above), one-half of which will be distributed to unsecured creditors, and the Debtor's principals will retain their equity interests.

**Issues Presented.**

Best Inn requests relief from the automatic stay pursuant to § 362(d)(1) & (d)(2). Best Inn contends that cause exists to terminate the stay pursuant to § 362(d)(1) based, *inter alia*, on the uncontested fact that: (1) the Debtor had failed to make at least six prepetition payments on Best Inn's secured obligation; and (2) the Debtor had failed to pay more than $93,000 in prepetition property taxes (which Best Inn recently paid to protect the collateral, and added to its loan balance). There was no testimony or evidence introduced at the hearing to refute these issues and the court accepts the well-pled facts in the moving papers and the supporting declaration of Timothy Ault in support of a finding that these facts are true. Accordingly, there is no dispute that some cause exists to grant the Motion. As part of an early cash collateral order, the Debtor has been making $4,000 monthly payments to Best Inn, which arguably covers the accruing interest in the secured portion ($700,000) of Best Inn's loan, and there was no evidence to suggest that the Hotel property itself is distressed or declining in value. The court therefore declines to find that Best Inn's interest in the Hotel is not, for now, adequately protected.

Best Inn contends that relief from stay is also appropriate under § 362(d)(2) because (1) the Debtor has no equity in the Hotel, and (2) the Hotel is not necessary to an effective reorganization. Here, based on the Debtor's own schedules, the "lack of equity"

---

[7] The Proposed Plan is also incomplete with regard to the treatment of certain claims, such as the Class 1 priority claims, and does not appear to be the actual document which the Debtor hopes to confirm.

issue is undisputed, so this part of the Motion boils down to the "effective reorganization" question. Despite the fact that the Motion was filed by Best Inn, the Debtor bears the burden of proof on this issue. § 362(g).

**Analysis and Conclusions of Law.**

**Timing of the Motion and the Burden of Proof.** Before proceeding, it is necessary to identify the rules that define what the Debtor is required to show and what the court must determine. When faced with a motion for relief from stay under § 362(d)(2), the debtor has the burden to show "a reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Assn v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 376 (1988). Applying this rule to subsequent cases, the Ninth Circuit Bankruptcy Appellate Panel has adopted the four-part test first stated in *In re Holly's, Inc.,* 140 B.R. 643, 700 (Bankr. W.D. Mich. 1992) in which the burden of proof is described as a "moving target which is more difficult to attain as the Chapter 11 case progresses." *See, In re Sun Valley Newspapers, Inc.,* 171 B.R. 71, 75 (9th Cir. BAP 1994). The *Holly's,* court separated the inquiry into four stages based on the timing of the creditor's motion for relief: "The four broad categories can be stated as follows: (1) is it *plausible* that a successful reorganization will occur within a reasonable time?; (2) is it *probable* that a successful reorganization will occur within a reasonable time?; (3) is it *assured* that a successful reorganization will soon occur?; or (4) is it *impossible* that a successful reorganization will occur within a reasonable time?" *Holly's,* 140 B.R. at 700 (emphasis original); *see also, Sun Valley Newspapers, Inc.,* 171 B.R. at 75.

*Holly's,* teaches us that the *Timbers* standard imposes an increasing burden of proof on the debtor regarding the viability of reorganization as a means of balancing a debtor's need to reorganize against the delay, and consequent harm, imposed on creditors by the automatic stay. Initially the balance favors the debtor. But the burden of proof rapidly shifts in favor of secured creditors, requiring a heightened showing by the debtor of its ability to reorganize. Immediately after the case is filed, a debtor opposing stay relief may offer a "less strenuous" showing of "a reasonable possibility of successful

8

reorganization within a reasonable time." During this stage, the debtor may sustain its burden of proof by offering evidence that a successful reorganization within a reasonable time is "plausible." The standard is initially low, requiring only evidence that is "superficially worthy of belief" that the debtor is capable of producing a plan. The terms of the plan can be obscure and vague, as long as it is plausible that a successful reorganization may occur. The bankruptcy court must balance the reasonableness of the delay borne by the secured creditors against the debtor's ability to formulate a confirmable plan. During this early phase of the case, if the debtor presents any evidence that a confirmable plan is plausible, the balance favors the debtor and the creditors are expected to wait while the debtor attempts to craft its plan. *Holly's,* 140 B.R. at 701.

As expiration of the exclusivity period draws near, a greater showing is required; the debtor must show that a successful plan of reorganization is "probable." "Probable" requires an evidentiary showing that it is more likely than not that the debtor is capable of producing a plan that is confirmable. Though not required to produce a plan or satisfy confirmation standards, it must produce sufficient evidence "that the tools necessary to formulate a plan are available." During this phase of the case, "the balance between the reasonableness of the delay borne by the secured creditors and the debtor's ability to formulate a plan is approximately equal." If the court can't be persuaded that a successful reorganization is probable, no further delay is warranted and the court should grant stay relief. *Holly's,* 140 B.R. at 701-02.

After exclusivity ends, the debtor faces the "most stringent and convincing showing" as to the viability of reorganization. The debtor must offer evidence that a successful reorganization within a reasonable time is "assured." "Assured" means that evidence offered in opposition to the motion for stay relief demonstrates that it is "certain or unquestionable that *a plan* to be considered at confirmation *will soon be produced.*" (emphasis original). Even at this late stage the debtor is not required to produce a plan to defend a motion for stay relief. But the debtor must produce "concrete evidence" that a plan capable of confirmation is forthcoming. After the expiration of the exclusivity

period, the "balance between the reasonableness of the delay borne by a secured creditor and the debtor's ability to formulate a plan favors the creditor." If the debtor fails in its showing, the creditor should be put to no further delay and the stay should be lifted. *Holly's,* 140 B.R. at 702.

Finally, notwithstanding the amount of time that a case has been pending, whether long or short, the court must grant relief if successful reorganization is "impossible." "Impossible" means there is a "lack of any realistic prospect of effective reorganization." *Holly's,* 140 B.R. at 702-03.

This case falls within the second temporal phase described in *Holly's,* the "probable" stage. The exclusivity period under § 1121(b) has not yet expired, but neither was this Motion brought immediately after the case was filed.[8] Balancing the reasonableness of further delay to be borne by Best Inn against the Debtor's ability to formulate a confirmable plan, the court must take into consideration that the need for bankruptcy relief wasn't forced upon the Debtor as a result of sudden or unexpected circumstances. The Debtor's financial difficulties began in 2010. The secured claim that Best Inn seeks to enforce has already been in default and the Debtor has already entered into at least one forbearance agreement to restructure the debt. (*See* footnote 1, *supra*.) The Debtor has had at least three years to address its financial problems and to develop a marketing and financial strategy to improve its business and save its assets. The fact that the Debtor has not seriously addressed these issues prior to the evidentiary hearing is a significant factor in the court's deliberation. The Debtor has had the protection of the automatic stay for more than two months to come forward with a feasible plan and show that it can "probably" reorganize. The court must therefore examine the evidence to determine whether it is "more likely than not" that the Debtor can produce a confirmable

---

[8] The Debtor is not a "small business" within the meaning of § 101(51D). Therefore, the exclusivity period expires 120 days after the commencement of the case, August 30, 2013. § 1121(b). The evidentiary hearing was held July 22, 2013, 81 days after commencement of the case.

plan and that "the tools necessary to formulate a plan are available." *Holly's,* 140 B.R. at 702. It is against the backdrop that the court will consider the Motion.

**The Probability of a Successful Reorganization.** Addressing the "probable reorganization" issue, Debtor's counsel first called the Debtor's principal Ramesh Vaghashia to testify with regard to the Debtor's financial records and future projections. Much of Mr. Vaghashia's testimony was confusing, ambiguous, and inconsistent with the documents offered into evidence. Best Inn points to the precipitous decline in gross revenue (approximately $100,000, more than one-third of the gross for 2011) reported on the Debtor's statement of financial affairs for 2011 and 2012 as evidence of the fact that the Debtor is in serious financial difficulty. The Debtor's June monthly operating report showed a positive cash flow, for the first two months of operation, of less than $4,000. However, it gave no details to show what expenses had, or had not, been paid. The June report showed a negative cash balance in the bank and numerous postpetition charges to the Debtor's account for bad checks.

Ramesh's testimony regarding pre and postpetition gross and net revenues was not supported by the Debtor's own profit and loss statement and monthly operating reports. For example, Ramesh acknowledged that the "lodging sales" figures ($278,662.83) reflected in the 2012 profit and loss statements (Debtor's exhibit B - the "2012 P&L Statement") was grossly overstated because it included cash advances (money charged to the Hotel customer's credit cards and given back to the customers after the deduction of a substantial fee) totaling approximately $121,700. If this is true, then the Debtor's actual gross income for 2012 would be closer to $157,000, not the figure of $192,384 reported in the statement of financial affairs. After adjustment for these "cash advances," the 2012 P&L Statement reports a net *operating loss* (adjusted to delete the depreciation expense) of more than $90,000. The 2012 P&L Statement does little to show that reorganization of the Debtor is probable.

On cross-examination, Ramesh was questioned about Best Inn's exhibit 15, the

Debtor's 2012 tenant occupancy tax ("TOT") return which reports "total rents received from all rental units" totaling approximately $125,000, far below both the "Income from operation of business" reported on the statement of financial affairs ($192,348), and the "lodging sales" reported on the Debtor's own 2012 P&L Statement ($156,962 after adjustment for the "customer charge backs"). In response, Ramesh explained that the TOT returns were wrong, and that his former business associate had intentionally understated the "total rents" to the County tax collector.[9]

Finally, with regard to projected future performance, Ramesh testified that the Hotel's business is seasonal, the best season begins in March and improves through the summer months. Ramesh projected that the Hotel's gross revenue should be approximately $30,000 per month for the months of June, July, and August. This testimony stands in stark contrast to the Debtor's monthly operating reports which show actual gross income for the months of May and June 2012, to be $17,069.57 and $17,718,86, respectively.

In summary, Ramesh's testimony regarding the Debtor's past performance and his "optimistic" projections for future performance were simply unbelievable. Ramesh did not have a firm grip on the Debtor's operations and a clear understanding of its financial conditions. When questioned, Ramesh seemed unfamiliar with the financial data and was woefully unable to explain the numerous discrepancies. When asked about the real property taxes (an issue near and dear to Best Inn), Ramesh didn't know how much the taxes were and could not explain why the monthly report did not show that money was

---

[9] Ramesh testified that during this time, an unknown number of rooms were rented for cash and the tenants were not charged the TOT. Based on Ramesh's testimony, the Debtor has a duty to file amended TOT returns to correctly report the total rents received for every year in which the false TOT returns were filed. There was no evidence, that the Debtor intends to file corrected TOT returns, or that the Debtor can possibly account for the "total rents" in those prior years based on its informal bookkeeping system. The County, however, would presumably be entitled to assert a priority claim for taxes, penalties and interest relating to the fraudulent TOT returns. The Debtor has not acknowledged or provided for this potential claim in either its Proposed Plan or its proposed budget.

being reserved to pay the property taxes. Ramesh's testimony, and the documents he offered into evidence, do not show that a successful reorganization is probable, or that any reorganization is even in process. Further, the court is not persuaded that the tools are presently in place to formulate and perform a successful plan of reorganization.

**The Debtor's Proposed Plan.** Before concluding, the court will address the Proposed Plan which the Debtor filed a week after the evidentiary hearing. The Debtor was not required to file a plan in response to a motion for relief from stay, but if a plan is so filed, the bankruptcy court is not required to hold a hearing to determine if the plan offered is confirmable before it can rule on the Motion. The court is only required to "determine if a successful reorganization is possible within a reasonable period of time. *In re Sun Valley Newspaper, Inc.*, 171 B.R. at 74 (rejecting the notion that a debtor could file an amended chapter 11 plan prior to every relief from stay hearing, "and thus be able to continue the hearings *ad infinitum*") (emphasis original).

As mentioned above, the Proposed Plan is premised on the suggestion that Govind will "unequivocally guarantee" performance of a plan confirmed on whatever terms the court may determine to be "fair and equitable." Govind also offered to train Ramesh and help him develop a better marketing plan for the Hotel. However, Govind is not proposing to purchase the Hotel and personally assume the Hotel's liabilities. Neither is he offering to take over and actually direct the Hotel's business operations which will apparently remain with Ramesh. The haunting question that remains unanswered after all of the testimony is: Why was the Debtor unable, or unwilling, to adjust to the changing market conditions in 2011 and 2012, when it was so apparent that the Debtor was headed for a financial disaster? Assuming for now that Govind could make some positive changes in the Hotel's operations, there was no evidence, empirical or otherwise, to show that the Hotel's declining business operations can be drastically reversed, within a reasonable period of time, to make the Proposed Plan feasible. Govind's nebulous offer of educational, logistical, and financial support is, at best, speculation and the court

13

cannot find that the Debtor has an "effective reorganization in prospect" based solely on a new scheme conceived and tendered for the first time in the middle of the evidentiary hearing. It is reversible error for a bankruptcy court to confirm a chapter 11 plan that is based on "visionary schemes which promise creditors and equity security holders more . . . than the debtor can possibly attain after confirmation." *Pizza of Hawaii, Inc. v. Shakey's Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985) quoting 5 *Collier on Bankruptcy* ¶ 1129.02[11] at 1129-34 (15th ed. 1984).

**Application of Rule 4001(a)(3).**

Federal Rule of Bankruptcy Procedure 4001(a)(3) provides that an order granting a motion for relief from an automatic stay is stayed until the expiration of 14 days after the order is entered, unless the court orders otherwise. Best Inn did not specifically request that the court waive this rule, however, the court must consider its application here in light of the circumstances. Rule 4001(a)(3), which was added by the 1999 amendments to the Federal Rules of Bankruptcy Procedure, recognizes that motions granting relief from the automatic stay can have enormous consequences for the parties involved and can often dictate the success or failure of the entire bankruptcy case. Rule 4001(a)(3) enables the debtor, or other party who opposes relief from stay, to seek a stay pending appeal of an adverse ruling. *9 Collier on Bankruptcy*, (15th Ed. Revised), ¶ 4001.04A, pg. 4001-18. "[W]ithout a stay pending appeal, appeals from such orders can often become moot if the party granted relief proceeds with a sale or some other action that cannot be easily undone." *Id.* at pg. 4001-19. For that reason, the court is reluctant to make any ruling which prematurely terminates the Debtor's appellate remedies.

Best Inn published a notice of sale under Cal.Civ.Code § 2924(f)(b) for enforcement of its liens before commencement of this bankruptcy. That sale date has been postponed to some future date pending a ruling on this motion. In theory, Best Inn will be in a position to conduct a trustee's sale soon after this ruling is entered. The timing and delay inherent in the State's statutory foreclosure scheme will not give the

14

protection here that is intended by Rule 4001(a)(3). In addition, the court is not yet persuaded that there isn't room for some deal to be worked out between Govind and Best Inn once the parties have had an opportunity to absorb the impact of this ruling.

**Conclusion.**

Based on the foregoing, the court is not persuaded that this Debtor can probably reorganize and confirm a chapter 11 plan based on the strength of its own resources. The Debtor now acknowledges that reorganization of the Hotel will require the massive personal and financial intervention of a third party, Govind Vaghashia. However, the Debtor currently does not have a viable chapter 11 plan, the only plan on file at the time of the evidentiary hearing having been materially amended twice during the course of the evidentiary hearing, and the subsequent Proposed Plan being incomplete and unsupported by evidence of its "probable" feasibility. Mr. Vaghashia's ability to both underwrite a successful chapter 11 plan and rebuild this Debtor into a profitable operation within a reasonable time is, at this point, purely speculative. Clearly, cause exists to terminate the automatic stay and the Debtor has not sustained its burden to establish that an effective reorganization is probable within a reasonable period of time. Accordingly, the Motion will be granted. The automatic stay will be terminated as it applies to Best Inn's right to exercise its remedies against the Hotel under applicable nonbankruptcy law. The fourteen-day stay of the court's order pursuant to Fed.R.Bankr.P. 4001(a)(3) will **not** be waived. Best Inn shall submit a proposed order consistent herewith.

Dated: August ___6___, 2013

_____
W. Richard Lee
United States Bankruptcy Judge

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | **Instructions to Clerk of Court** |
| 5 | **Service List - Not Part of Order**/Judgment |
| 6 | |
| 7 | The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail. |
| 8 | |
| 9 | Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __X__ Other Persons Specified Below: |
| 10 | |
| 11 | Robert P. Goe, Esq. |
| 12 | Attorney at Law |
| 13 | 18101 Von Karman Avenue, Suite 510 |
| | Irvine, CA 92612 |
| 14 | |
| 15 | Marc Forsythe, Esq. |
| | Attorney at Law |
| 16 | 18101 Von Karman Avenue, Suite 510 |
| 17 | Irvine, CA 92612 |
| 18 | |
| 19 | Office of the U.S. Trustee |
| | U.S. Courthouse |
| 20 | 2500 Tulare Street, Suite 1401 |
| | Fresno, CA 93721 |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |